# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

MATTHEW C. STECHAUNER,

                Petitioner,

        v.                            Case No. 08-C-0607

JUDY P. SMITH,[1]

                Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE

Matthew Stechauner petitions under 28 U.S.C. § 2254 for a writ of habeas corpus, challenging his conviction for second-degree reckless homicide and armed robbery with use of force, both as a party to the crime. Stechauner was convicted in Milwaukee County Circuit Court and sentenced to a total of twenty-five years of confinement and fifteen years of extended supervision. The Wisconsin Court of Appeals affirmed Stechauner's conviction, and the Supreme Court of Wisconsin denied his request for review.

In its screening order, this court dismissed three of Stechauner's claims and permitted three to continue. The remaining grounds for relief, renumbered, are (1) a Fifth-Amendment claim regarding statements Stechauner sought to suppress under *Miranda v. Arizona*, 384 U.S. 436 (1966); (2) an ineffective-assistance-of-counsel claim regarding various asserted errors by counsel; and (3) a claim that Stechauner's no-contest plea was entered unknowingly and involuntarily due to ineffective assistance of counsel and Stechauner's mental condition.

---

[1] When Stechauner filed this case he was confined at Waupun Correctional Institution. He was later transferred to Racine Correctional Institution, but in a recent letter said that he was transferred again, to Oshkosh Correctional Institution (OCI). Per the letter from Stechauner (Doc. 47), confirmed by the Department of Corrections website, *see* Department of Corrections Racine Correctional Institution, http://doc.wi.gov/families-visitors/find-facility/oshkosh-correctional-institution (last visited Dec. 1, 2015), Judy P. Smith is the warden at OCI. The caption has been amended to reflect the present custodian.

Stechauner exhausted the first issue in his direct appeal in the state courts. In its March 27, 2007, decision, the Wisconsin Court of Appeals rejected Stechauner's arguments and affirmed on the merits; subsequently, the Supreme Court of Wisconsin denied review. After this court issued its screening order, respondent moved for a stay of this case so Stechauner could exhaust his other two claims in the state courts. Stechauner agreed with the request, and this court stayed and administratively closed the case for three years.

Stechauner returned to the state trial court and filed a motion for collateral postconviction relief under Wis. Stat. § 974.06. The motion was denied, and in a decision of December 7, 2010, the Wisconsin Court of Appeals affirmed. Stechauner's request for review was denied by the Supreme Court of Wisconsin. He then returned to this court.

After this habeas case was reopened, respondent answered the petition and the parties briefed the three remaining issues. Stechauner had filed a brief with his petition, but he was permitted to file another brief to address the § 974.06 proceedings and decisions. (In reaching the present decision, the court has considered all of Stechauner's briefs and filings.) Respondent filed pertinent portions of the record, including transcripts of the trial court's oral rulings on his motion to suppress and two plea hearings. Respondent agrees that Stechauner has now exhausted his available state court remedies on the remaining grounds for relief and that his petition was timely filed. (Doc. 42 at 2 n.2.)

Stechauner asks for an evidentiary hearing. He has provided his own declaration as well as declarations of others.

STANDARD OF REVIEW AND STANDARD FOR EVIDENTIARY HEARING

A petition seeking a writ of habeas corpus may not be granted as to any claim that was adjudicated on the merits in state court unless the decision on that claim "resulted in a

2

decision that was contrary to, or involved an unreasonable application of, clearly established" U.S. Supreme Court law or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state-court decision is "contrary to" Supreme Court law if the state court arrived at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on facts that are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court law if the state court identified the correct governing legal principle but unreasonably applied that principle to the facts of the case. *Id.* at 407-09, 413.

A federal court analyzing the "unreasonable application" prong of § 2254(d)(1) "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. This standard is a "substantially higher threshold" than whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933 (2007); *see Cullen v. Pinholster*, 563 U.S. 170, __, 131 S. Ct. 1388, 1398 (2011) (stating that the standard of § 2254(d) is difficult to meet and highly deferential, demanding that state-court decisions receive the benefit of the doubt). Importantly for this case, a state court's fact determinations are presumed correct and a petitioner must rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As the Supreme Court has stated, if the standard of review in a habeas case

> is difficult to meet, that is because it was meant to be. . . . [A] state prisoner
> must show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fair-minded
> disagreement.

3

*Harrington v. Richter*, 562 U.S. 86, 102–03, 132 S. Ct. 770, 786–87 (2011).

The relevant state court decision is that of the last state court to review the issue. *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009). The standard of review in § 2254(d) applies even where the state court issued only a summary denial. *Cullen*, 131 S. Ct. at 1402. In reviewing a summary denial, the habeas court must determine what arguments or theories could have supported the state court's decision and ask whether fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of the U.S. Supreme Court. *Id.*

Review under § 2254(d)(1) (the "contrary to" or "unreasonable application" provision) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S. Ct. at 1398. Because the deferential standards in § 2254(d) control, this court must take those standards into account when deciding whether an evidentiary hearing is appropriate. *Schriro*, 550 U.S. at 474. Any evidence that would be introduced in federal court would be irrelevant to review under § 2254(d)(1). *Cullen*, 131 S. Ct. at 1400. If a claim has been adjudicated on the merits by a state court, the federal habeas petitioner must rely only on the record that was before the state court. *Id.*

When § 2254(d)(1) does not bar federal habeas relief—for instance when a claim was not adjudicated on the merits in state court—§ 2254(e)(2) permits an evidentiary hearing in limited circumstances. *Cullen*, 131 S. Ct. at 1401. If the petitioner failed to develop the factual basis of a claim in state-court proceedings, the court may conduct an evidentiary hearing only if the petitioner shows that (1) the claim relies on either a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the

4

facts underlying his claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error no reasonable fact-finder would have found him guilty. § 2254(e)(2).

## DISCUSSION

(1)    The *Miranda* Claim

Stechauner and some friends were riding in a car with a sawed-off shotgun when the gun went off and shot Stechauner in the leg.  In the late afternoon or early evening he was driven to the hospital, where a nurse found a bag of bullets in one of Stechauner's pockets. The nurse called the police.  Officers went to the hospital around 7:00 p.m. to question Stechauner, and there was a discussion about where the gun was located.  While at the hospital, Stechauner told an officer that the gun had been taken to a friend's house where children were present.  The officers asked Stechauner to take them to the gun so it could be recovered to protect the children.

After Stechauner's discharge from the hospital that evening, he was handcuffed and transported in a squad car to the friend's house.  After a confrontation outside the house between Stechauner and his friend, Eddie Mares, either Stechauner or Mares told the officers that the sawed-off shotgun was under the outside stairs.  Officers retrieved the sawed-off shotgun and tried to remove the cartridge, at which point Stechauner made a statement about needing pliers to remove it.  Upon seeing the sawed-off shotgun, officers matched the type of weapon and Stechauner's appearance to a string of armed robberies.  Stechauner was taken to a police station.  Four hours later he was read his *Miranda* rights and then questioned through the night for nine more hours, during which time he confessed to armed robberies and a homicide.

5

Stechauner's counsel moved to suppress certain statements Stechauner made at the hospital, in or around the squad car at Mares's house, and at the police station. The state trial judge conducted a hearing (called a *Miranda-Goodchild* hearing in Wisconsin), at which three officers and Stechauner testified. Following the hearing, the judge held that Stechauner was not in custody at the hospital, and that his statements at the hospital were noncustodial; that Stechauner was in custody in the squad car, but had volunteered the statements following his confrontation with Mares and upon seeing an officer try to remove a casing from the recovered sawed-off shotgun; and all of Stechauner's statements regarding the location of the gun and how to remove the shell casing from the shotgun were admissible. As for the statements at the police station, the trial judge found that Stechauner was read his *Miranda* rights before making the statement, he was coherent and not under the influence of alcohol or drugs, he understood his rights, and he was not subject to coercion or force. The judge held that Stechauner freely, voluntarily and intelligently waived his *Miranda* rights and talked at the police station. As to all of the challenged statements the trial judge based her decision on credibility findings—the police officers were credible while Stechauner was not.

On direct appeal, Stechauner challenged these rulings. He argued that his statements violated *Miranda* because he was in custody and had not been advised of his rights and his statements at the hospital and in the squad car were involuntary. The Wisconsin Court of Appeals affirmed on the merits. Stechauner raised the issue again in his § 974.06 motion, but the court rejected the argument because it had been raised previously. Because the first Wisconsin Court of Appeals decision (issued on March 27, 2007), on direct appeal, addressed the merits of this claim, this court will consider that as the pertinent state-court decision for purposes of habeas review. The second Wisconsin Court of Appeals decision

6

(issued on December 7, 2010), regarding the denial of Stechauner's § 974.06 motion, stated merely that Stechauner sought to raise his *Miranda* claims again but could not do so. (Doc. 32, Ex. M at 3-4.)

Regarding the statements at the hospital and in the squad car, the Wisconsin Court of Appeals wrote as follows:

> ¶ 12 The safeguards of *Miranda* apply only when a suspect is "in custody." A person is "in custody" for *Miranda* purposes when one's "freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (citation omitted); *State v. Pounds*, 176 Wis. 2d 315, 321, 500 N.W.2d 373 (Ct. App. 1993). In assessing whether the person is "in custody," a court should consider the totality of the circumstances, including whether the person is free to leave, the purpose, place and length of the questioning, and the degree of restraint. *See State v. Gruen*, 218 Wis. 2d 581, 594, 582 N.W.2d 728 (Ct. App. 1998). Because "custody" is determined by an objective standard, the subjective belief of the suspect and the subjective intent of the police are irrelevant. *Stansbury v. California*, 511 U.S. 318, 323-24 (1994); *Pounds*, 176 Wis. 2d at 321.

> ¶ 13 Here, the trial court found that Stechauner was not in custody at the hospital and that the police testimony was more credible. The trial court is the arbiter of credibility as it is in a better position to assess who is being truthful. *Leciejewski v. Sedlak*, 116 Wis. 2d 629, 637, 342 N.W.2d 734 (1984). The police testified that Stechauner was not in custody at the hospital, that he was not handcuffed or restrained in any way, and that he was not considered a suspect at that time. Stechauner contradicted that testimony, claiming he was handcuffed and believed he was in custody. In reviewing the trial court's findings, we conclude that they are not clearly erroneous. The testimony of the police supports the trial court's findings that Stechauner was not in custody when he spoke with police at the hospital.

> ¶ 14 In addressing the statements at issue after Stechauner was placed in the squad car, the trial court made the following findings of fact. It found that the statement as to the location of the gun was provided after the confrontation between Stechauner and Mares. The trial court indicated that this statement was not provided as a result of police interrogation or questioning. Further, the trial court found that the statement Stechauner made about how to remove the casing was a voluntary statement he made after he saw the detective struggling to remove the casing. This statement, too, was not the product of police interrogation. The detective did not ask Stechauner how to remove the casing; rather, Stechauner, on his own, shouted out this information to the officer.

7

Again, these findings are not clearly erroneous as the testimony of the police at the suppression hearing supports the trial court's findings.

> ¶ 15 Based on the foregoing, we conclude that the trial court did not err in denying Stechauner's motion seeking to suppress inculpatory statements he made at the hospital and at the Mares home. The hospital statements were made while Stechauner was *not* in custody and the subsequent statements were voluntary and not the product of police questioning.

(Doc. 9, Ex. E at 6-7.)

Regarding the statements at the police station, the Wisconsin Court of Appeals similarly found that the trial court's findings were supported and no constitutional violation occurred:

> ¶ 17 When the state seeks to admit a defendant's custodial statement, constitutional due process requires that it make two discrete showings: (1) the defendant was informed of his *Miranda* rights, understood them, and knowingly and intelligently waived them; and (2) the defendant's statement was voluntary. *State v. Lee*, 175 Wis. 2d 348, 359, 499 N.W.2d 250 (Ct. App. 1993). A defendant's assertion that his statements were involuntary places on the state the threshold burden to prove by a preponderance of evidence that his statements were voluntary. *Id.* at 360-63. To meet this burden, the state must show that the defendant made the statements willingly and not as a result of duress, threats, or promises. *Id.* at 360. Once the state has made a *prima facie* case of voluntariness, the burden shifts to the defendant to present rebuttal evidence. *Id.* at 360-61. If a defendant fails to present evidence of coercion in rebuttal, further inquiry about balancing the actions of the police with the personality of the defendant is inappropriate. *State v. Deets*, 187 Wis. 2d 630, 635-36, 523 N.W.2d 180 (Ct. App. 1994).

> ¶ 18 Here, the trial court's findings are supported by testimony in the record, and in accordance with its credibility assessment. Stechauner makes various assertions, claiming he was drowsy, under the influence, and coerced by the police during the interrogation. There is nothing in the record to support Stechauner's assertions, except his own testimony, which the trial court found to be incredible. The record reflects that Stechauner's statements were voluntary and were the product of free and unconstrained will, not due to police pressure. *See State v. Hoppe*, 2003 WI 43, ¶ 36, 261 Wis. 2d 294, 661 N.W.2d 407. Accordingly, the statements were properly ruled admissible.

(Doc. 9, Ex. E at 10.)

8

Here, Stechauner presents evidence such as his hospital records to show that he was given Vicodin at the hospital, and he swears that he was intoxicated when he made his various statements. He seeks an evidentiary hearing on such facts. However, no evidentiary hearing is permitted. The Wisconsin Court of Appeals decided this claim on the merits, and this court reviews the claim under § 2254(d)(1). As stated above, review under § 2254(d)(1) (the "contrary to" or "unreasonable application" provision) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 131 S. Ct. at 1398. Stechauner must overcome the limitations of § 2254(d)(1) on the record that was before the state court.[2]

The state trial court's findings were *not* unreasonable in light of the evidence presented in the State court proceedings. The testimony at the *Miranda-Goodchild* hearing supported the trial court's finding that Stechauner was not credible and the testifying officers were. (Doc. 35, Tr. 3 at 103–07, Tr. 6 at 4–5.) The trial court identified (*see* Doc. 35, Tr. 3 at 103–07) exaggerations in Stechauner's testimony such as that he had drunk fifteen shots of liquor when the bottle was only pint-sized and was being shared among five people (Doc. 35, Tr. 3 at 64–65), differences in Stechauner's recollection such as his detail regarding unimportant facts like his holding cell (Doc. 35, Tr. 3 at 72–74) while claiming that he could not comprehend what was going on (*id.* at 68), and Stechauner's implausible explanation that he was incapable of providing background personal facts during the station interrogation for his "pedigree" sheet and that the police must have researched his information instead (*see* Doc.

---

[2]Stechauner would not meet the requirements of § 2254(e)(2) in any event. He was given an opportunity to present such evidence to the state trial court. That court held a hearing and took testimony, including that of Stechauner. Stechauner disagrees with the trial court's findings, but simple disagreement does not justify granting a hearing here.

To the extent Stechauner wishes to rebut the state court's fact determinations, which are presumed correct, he has not set forth clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This court has reviewed the transcript of the *Miranda-Goodchild* hearing and the trial court's findings were supported by the testimony of the police officers.

9

35, Tr. 3 at 32–33, 84–87). Meanwhile, according to the trial court, two police officers testified consistently regarding the events at the police station. (Doc. 35, Tr. 3, at 104, 107.)

Further, the testimony at the hearing supported the trial court's findings regarding lack of custody at the hospital and voluntariness regarding the statements made in the hospital and squad car. A police officer indicated that Stechauner was not handcuffed at the hospital and testified that Stechauner was initially questioned regarding whether he was a victim of a shooting that could be prosecuted. (Doc. 35, Tr. 3 at 8–9, 21 (stating that Stechauner was handcuffed when placed in the squad car), 27.) Regarding statements in or around the squad car, the officer testified that either Stechauner or Mares volunteered the location of the shotgun after their confrontation rather than as a result of police questioning, and that Stechauner shouted out his comment about the casing without prompting from the officers. (*See* Doc. 35, Tr. 3 at 13–14.) Finally, regarding the statements at the police station, the testimony at the hearing supported the trial court's findings that Stechauner was given *Miranda* warnings and that he was coherent and understood what was happening at the police station. The officer who took Stechauner's statement testified that warnings were provided (Doc. 35, Tr. 3 at 30–31) and showed the court Stechauner's written statement, which included Stechauner's signature on the statement where it documented that he had been advised of his rights (*id.* at 38–39). The officer testified that Stechauner did not appear to be under the influence of drugs or alcohol at the time of his statement (*id.* at 36), that Stechauner was coherent in answering questions, and that Stechauner seemed to understand what was happening (*id.* at 36–37, 41). According to the officer, before interrogation began Stechauner said his gunshot wound was not affecting him and that he was not tired (*id.* at

10

36–37), and even hours later Stechauner did not ask for breaks, seemed "vibrant" rather than tired, and when asked if he wanted to stop said he wanted to continue (*id.* at 43–46, 56).

The trial judge found Stechauner not credible regarding the amount of drugs and alcohol ingested on the evening of his arrest. (Doc. 35, Tr. 3 at 105.) Further, as pointed out by the judge, Stechauner was a large man and the evidence showed that he could not have ingested any drugs or alcohol after at least 7:15 p.m. (when police questioned him at the hospital) and several hours had passed before questioning began at the police station at 1:58 a.m. (*See* Doc. 35, Tr. 3 at 6, 105–06.)

In addition, the Wisconsin Court of Appeals opinion was neither contrary to nor an unreasonable application of Supreme Court law. Pursuant to *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* As for the statements at the hospital and in the squad car, the Wisconsin Court of Appeals relied upon the applicable Supreme Court law set forth in *Miranda*, *Berkemer*, and *Stansbury*. To the extent that the appeals court referenced Wisconsin cases, those cases in turn referenced and cited to *Miranda* and *Berkemer*. *See State v. Gruen*, 218 Wis. 2d 581 (Ct. App. 1998); *State v. Pounds*, 176 Wis. 2d 315 (Ct. App. 1993).

*Miranda* and its progeny indicate that the *Miranda* safeguards apply when a suspect is in custody; in other words, police must provide the warnings before conducting custodial interrogation. On the facts as found, Stechauner was not handcuffed to the bed at the

11

hospital and the situation did not amount to custody, thus no improper *custodial* interrogation occurred. (*See* Doc. 35, Tr. 6 at 4–6, 9.) Stechauner argues extensively that he was in custody in the squad car. The trial court agreed with Stechauner on that point, and no one disputed that Stechauner was not given *Miranda* warnings in the squad car. (Doc. 35, Tr. 6 at 6.) But she then found that Stechauner volunteered the statements about the location of the gun and casing after a confrontation with Mares and upon seeing an officer try to remove the casing, not based on police conduct or questioning; thus, no improper custodial *interrogation* occurred. (Doc.35, Tr. 6 at 7–8, 11.) These conclusions, upheld by the Wisconsin Court of Appeals, were reasonable under applicable federal caselaw.

And finally, Stechauner now does not dispute that *Miranda* warnings were given at the police station. The Wisconsin Court of Appeals cited to *State v. Lee*, 175 Wis. 2d 348 (Ct. App. 1993), for the standard that for a custodial statement to be admissible the state has to show that the defendant was informed of his *Miranda* rights, understood them and knowingly and intelligently waived them, and that the statement was voluntary. In setting forth its analysis, the *Lee* court relied on the U.S. Supreme Court cases of *Miranda*, *Colorado v. Connelly*, 479 U.S. 157 (1986), and *Colorado v. Spring*, 479 U.S. 564 (1987). As set forth in *Spring*, a statement "is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege." 479 U.S. at 573 (citing *Miranda*, 384 U.S. at 444). And whether a waiver was voluntary, knowing, and intelligent depends on, first, whether the relinquishment of the right was "the product of a free and deliberate choice rather than intimidation, coercion, or deception" and, second, whether it was "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (citing *Moran v. Burbine*, 475 U.S. 412, 421

12

(1986)).  Accordingly, the state courts reasonably found that Stechauner waived his right against incrimination and made a knowing, intelligent, and voluntary statement.  The evidence as presented and assessed by the trial court showed that Stechauner's mental state was not impaired, that he understood his privilege against self-incrimination and the consequences of speaking to officers, and that the officers involved did not exert any coercive pressure on him.  Thus, no *improper* custodial interrogation occurred. The state courts identified the correct governing legal principles and applied them appropriately to the facts before them.

In sum, Stechauner fails to meet the standard for habeas relief on this claim.

(2)      The Claim of an Unknowing and Involuntary Plea

After the trial court denied Stechauner's motion to suppress, he pled guilty to the two counts at issue in this case.  Thereafter, his attorney, Bud Stein, was allowed to withdraw. After new counsel, Richard Poulson, was appointed, Stechauner was allowed to withdraw his plea.  Several months later, Stechauner pled no contest to the homicide and guilty to the armed robbery and the case proceeded to sentencing and judgment.  Following judgment, a third attorney, Eileen Miller Carter, filed postconviction motions in the trial court under Wis. Stat. § 974.02.  Carter then represented Stechauner on his direct appeal in the Wisconsin Court of Appeals.

Stechauner contends that his second set of pleas (no-contest/guilty) was entered unknowingly and involuntarily due to ineffective assistance of counsel and his mental condition.  Although the second set of pleas is the focus of inquiry here, the record of both hearings is informative regarding Stechauner's mental condition, knowledge and understanding of the proceedings.  It demonstrates that at the time Stechauner entered his

13

first guilty plea and his second no-contest/guilty plea, he was coherent and entered into the plea knowingly and voluntarily.

At the first plea hearing (the plea that was later withdrawn), the court questioned Stechauner as follows:

> THE COURT: . . . . You are currently being treated for a mental health issue. Can you tell me a little bit about that?
>
> THE DEFENDANT: I was diagnosed at Mendota because a drama [sic], a traumatic drama, physical and some traumatic disorder.
>
> THE COURT: Traumatic stress disorder?
>
> THE DEFENDANT: Yeah. And –
>
> THE COURT: Posttraumatic.
>
> THE DEFENDANT: – voices, hearing voices. And they said my brain's a retarded brain, went back, that was a couple years ago. But, you know, they still said it. And I still have trouble and difficulties in school with that. But they're trying to give me more length of time on tests to do more time. And they say – they – of trauma to the head, loss of consciousness, short-term memory from banging my head for I used to bang my head at Mendota for hours. I lost a lot of my thinking. Sometimes I just do things and don't think, you know, impulsive.
>
> THE COURT: But you're not being medicated for –
>
> THE DEFENDANT: Yeah. I'm on Thorazine right now which is a [sic] antipsych medication.
>
> THE COURT: All right. And have you taken that Thorazine within the last 24 hours?
>
> THE DEFENDANT: Yes. I'm on it right now as a matter of fact.
>
> THE COURT: All right. And when you take your Thorazine, does it make you – does it help you understanding things going on around you or make it more difficult for you to understand things?
>
> THE DEFENDANT: I think it helps me a little bit. But, you know, it makes me – it's like something to calm me down. It makes me more sleepier so I don't act

14

out.  I think a couple weeks ago I got strapped down in the County jail a couple weeks ago for banging my head again which I cracked it open again.

(Doc. 35, Tr. 6 at 27–29.)  The court then questioned Stechauner about whether he had understood everything in court that day and all of his conversations with his lawyer, and Stechauner answered "yes." (*Id.* at 29.)  Thereafter, the court described the constitutional rights Stechauner was waiving and several times asked if Stechauner understood what his rights were. (*Id.* at 29–31.)  Stechauner told the court that his lawyer had read the criminal complaint to him and that he had gone over the complaint himself. (*Id.* at 32.)  When asked whether he was at all confused about his guilty plea in court that day or if he did not understand any part of the proceeding, Stechauner told the judge "No." (*Id.* at 35.)  At the first plea hearing, Attorney Stein told the court that Stechauner seemed to understand what was going on and that although Stechauner had a history of mental issues, Stein did not "see any of that in [his] discussions" with Stechauner. (*Id.* at 37.)  Afterward, the judge found that Stechauner entered his plea "freely, voluntarily, intelligently and with full understanding of the nature of the charges, the maximum possible penalties and the rights given up by pleading guilty." (*Id.* at 40.)

Stechauner was allowed to withdraw his plea but then later pled no-contest and guilty to the charges at issue in this habeas based on the same criminal complaint.  At the second plea hearing Stechauner told the judge that he understood the plea negotiations and agreement, that he had talked with Attorney Poulson about the plea and Poulson had answered all his questions. (Doc. 35, Tr. 12 at 12.)  Stechauner said that he had read the court's plea questionnaire together with counsel but that he had no problem reading it himself, that he understood the form, and that he had enough time to talk with Poulson about it. (*Id.*

15

at 13–14.) Stechauner added that he had a ninth-grade education and was working on his HSED. (*Id.* at 14.) The judge referenced that Stechauner had signed the plea questionnaire in court at the hearing. (*Id.* at 13.)

When questioned by the court at the second plea hearing about mental health, Stechauner indicated that he was then in treatment but not taking any medications in state prison, though someone at the jail had forced him to take Thorazine the morning of the hearing. (*Id.* at 14–15.) However, Stechauner said that the medication was not affecting him in any way at the hearing and that he was having no side effects. (*Id.* at 15–16.) Stechauner then told the court that he had discussed each of his constitutional rights with Poulson, that he understood them, and that he understood that he was giving up those rights. (*Id.* at 16.) Stechauner told the court that he had signed the plea questionnaire form after reading the whole form with his attorney. (*Id.* at 17.) Further, Stechauner indicated he had read an addendum to the plea questionnaire, discussed it with his attorney, and signed it. (*Id.*) Stechauner confirmed that he understood he was giving up an alibi defense and that he had read the criminal complaint. (*Id.* at 18.) The court then walked Stechauner through the counts of the criminal complaint to which he was pleading, and Stechauner confirmed that he understood them and that Poulson had explained what the state would have to prove if Stechauner went to trial. (*Id.* at 19–21.) Stechauner told the judge that he was entering his plea freely and voluntarily. (*Id.* at 25.) Poulson advised the court that he had discussed with Stechauner the plea documents and elements that the state would have to prove and that he was confident that Stechauner understood the plea negotiations and was freely and voluntarily admitting the two charges. (*Id.* at 29.) Further, Poulson indicated that Stechauner decided that for certain reasons he wanted to enter a no-contest plea to the second-degree

16

reckless homicide count rather than a guilty plea. (*Id.* at 30–32.) Upon this backdrop, the judge found that Stechauner entered the pleas freely, voluntarily, and intelligently. (*Id.* at 32.)

The Wisconsin Court of Appeals rejected Stechauner's plea-related arguments within the context of ineffective-assistance-of-counsel claims. The appeals court did not accept Stechauner's claim that he was not competent to proceed at the second plea hearing, noting that neither a history of mental illness, mental deficiencies, nor the taking of medication renders a person incompetent to proceed. The court found that

> the Record reflects that Stechauner testified coherently at a suppression hearing, responded appropriately to the circuit court's inquiries during the plea colloquy, and did not exhibit behavior during the proceedings suggesting that he was disoriented or confused. The circuit court correctly determined that Stechauner failed to allege facts showing that his lawyers performed deficiently by failing to challenge his competency.

(Doc. 32, Ex. M at 6–7.) Further, said the court:

> ¶ 21 Stechauner asserts that his trial lawyer "forced him to plead guilty" and to sign documents that he had not read. He also states that he did not receive "a copy of the plea concessions." These claims are completely conclusory. . . . The circuit court conducted a thorough and appropriate colloquy before accepting the pleas. The State disclosed the terms of the plea bargain on the Record, and Stechauner acknowledged that he understood. During the colloquy, he admitted that he had reviewed documents with his lawyer in preparation for his pleas and that he had not been threatened or coerced.

(Doc. 32, Ex. M at 9–10.) These conclusions were not an unreasonable application of federal law in any way. The record shows that Stechauner's final plea was made knowingly, intelligently, and voluntarily. The charges and elements of the crimes were explained to him by counsel not once, but twice. Twice he was told by a judge of his constitutional rights and the effect of his pleas. Stechauner stated in court that he had read the second plea agreement with counsel, that he understood it, and that he had no questions about it. Nothing in either plea hearing record suggests that Stechauner's medication or mental limitations

17

affected his ability to proceed. Thus, his argument that his plea was involuntary and his argument that his attorney was ineffective for not challenging his competency fail. Attorney Poulson was not deficient for failing to challenge Stechauner's competency when the facts did not support such an argument.

Stechauner seeks an evidentiary hearing and has submitted new evidence regarding the voluntariness of his plea, such as his declaration that he "was forced to enter [his] plea while under the influence of medication" and that he never read the plea or received a copy of it and that he does not remember signing it. (Doc. 15; *see also* Doc. 29 (stating "I never got a copy of my plea and don't remember signing it or reading it" and that he was mentally ill during the plea process).) Because this claim was determined on the merits by the Wisconsin Court of Appeals, this court cannot hold an evidentiary hearing or consider additional evidence. But even if the court allowed such evidence, whether Stechauner presently remembers signing the plea agreement is immaterial; the record of the second plea hearing indicates that Stechauner had the documents in court and told the court he had read them. His more recent statements contradicting the transcripts cannot justify an evidentiary hearing or relief.

(3)     The Ineffective-Assistance-of-Counsel Claim

Stechauner contends that numerous errors by all three of his attorneys constituted ineffective assistance of counsel. To establish ineffective assistance of counsel a petitioner must show that counsel's performance was deficient and that he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the performance prong of the *Strickland* test, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The court must determine "whether, in

18

light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. *Strickland* permits latitude in permissible attorney conduct. *See id.* at 689. Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Id.* The petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.* To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This standard requires a substantial, not just conceivable, likelihood of a different result. *Cullen*, 131 S. Ct. at 1403.

The state trial court rejected Stechauner's ineffective-assistance-of-counsel claims on the merits without holding any hearing. Because the state courts addressed the merits of this argument, no hearing is allowed in this court under *Cullen*, notwithstanding that the trial court held no hearing. If on the record the Wisconsin Court of Appeals decision was not contrary to or an unreasonable application of U.S. Supreme Court law and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, Stechauner's petition must be denied.

In its December 7, 2010, decision, the Wisconsin Court of Appeals considered and rejected Stechauner's ineffective-assistance-of-counsel arguments by applying the controlling standard of *Strickland*. (Doc. 32, Ex. M at 4.) Thus, the decision is not contrary to Supreme Court authority. Nor, for the following reasons, was the Wisconsin Court of Appeals decision an unreasonable application of *Strickland* to the facts.

19

Stechauner says that Attorney Stein failed to file a motion regarding his seizure by police and the resulting evidence. However, the record indicates that Stein *did* file a motion to suppress and at the end of the evidentiary hearing on that motion contended that Stechauner had been seized at the hospital and in the squad car but not given *Miranda* warnings. (Doc. 35, Tr. 3 at 97–98.) Therefore, Stein did not commit the failure that Stechauner claims.

Additionally, Stechauner claims that Stein referred to him as a murderer. However, Stechauner fails to establish that any such reference (if it occurred) was made before a judge in the case or in any court record that affected the outcome of this case. Thus, Stechauner cannot show any prejudice from such a statement.

In briefing on his request for an evidentiary hearing, Stechauner argued that Stein was ineffective for failing to (1) call additional witnesses at the *Miranda-Goodchild* hearing who would have testified that Stechauner was handcuffed at the hospital and that he was drunk and high at that time, and (2) to obtain and present hospital records showing that Stechauner had been given Vicodin during treatment for a gunshot wound. (*See* Doc. 26.) On this matter, the Wisconsin Court of Appeals wrote:

> ¶ 18 Stechauner also complains that his first trial lawyer did not call his mother, Starella Frye, to testify at the suppression hearing that he was seized and in police custody while hospitalized. Stechauner included Frye's affidavit to support his claim. The affidavit does not aid Stechauner, however, because Frye averred that she did not see or have contact with him in the hospital.

> ¶ 19 . . . . Stechauner fails to show how Frye's testimony could have assisted the circuit court to determine his custodial status in the hospital, given that Frye had no contact with him while he was hospitalized. Thus, Stechauner did not satisfy his burden of showing how Frye's testimony "'would have altered the outcome of the proceeding.'"

20

¶ 20 Stechauner names seven people in addition to his mother who he claims should have testified at the suppression hearing, and he faults his first trial lawyer for failing to call them as witnesses. He offers no support for his conclusory assertions that the people he names would have provided any relevant information about his custodial status. Therefore, the circuit court properly rejected the allegations.

(Doc. 32, Ex. M at 8–9 (citations and footnote omitted).) Also, the Wisconsin Court of Appeals found that Stechauner's argument that Stein failed to offer the hospital records at the suppression hearing was "so lacking in merit or so inadequately developed that [it did] not warrant individual discussion." (Doc. 32, ex. M at 11.)

This court sees no unreasonable application of *Strickland* regarding Stein's representation at the hearing. Nothing suggests that the Wisconsin Court of Appeals was inaccurate regarding Starella Frye's lack of personal knowledge respecting Stechauner's time at the hospital. And Stechauner fails to establish here that he provided the Wisconsin Court of Appeals with sufficient information concerning the other witnesses such that the appellate court unreasonably came to its conclusion. Here, Stechauner seeks to submit evidence from, for example, his sister, who declares that she was at the hospital and saw a detective handcuff Stechauner to the bed and that Stechauner had taken sleeping pills and ecstasy at her house and in a car between 4:00 and 6:00 p.m. However, this court cannot hold a hearing, and Stechauner does not indicate whether he presented the state courts with similar affidavits. Moreover, Stechauner cannot establish prejudice, as this court sees no substantial likelihood of a different result.

Stechauner contends that Poulson failed to ask for a psychiatric review, coerced Stechauner to take a plea, failed to give Stechauner any discovery or a copy of the plea agreement, and told Stechauner to sign papers without reading them. The alleged plea-

21

agreement-stage representation was addressed in the section above—the record does not support Stechauner's contentions. As for a psychiatric review, such a review would have made no difference in the outcome. Regardless of a psychiatrist's opinion as to Stechauner's mental illness or capacity, the record from two plea hearings indicates Stechauner was competent to enter the plea at issue. As for the alleged lack of discovery, the Wisconsin Court of Appeals held that that argument, too, was "so lacking in merit or so inadequately developed that [it did] not warrant individual discussion." (Doc. 32, ex. M at 11.) Hence, Stechauner fails to persuade this court that the Wisconsin Court of Appeals' rejection of the discovery argument was an unreasonable application of federal law.

As for Attorney Carter, Stechauner argues that she failed to raise an ineffective assistance of counsel claim regarding Stein's or Poulson's conduct. As Stechauner has pointed to no deficient and prejudicial conduct of Stein or Poulson, Carter's failure to raise an ineffective assistance of counsel argument respecting her predecessors did not constitute deficient conduct. Moreover, as an ineffective assistance of counsel claim can be raised in a collateral motion under § 974.06, Stechauner suffered no prejudice through Carter's failure to assert it on direct appeal. Finally, Stechauner contends that Carter failed to seek withdrawal of Stechauner's plea. However, he describes no basis on which his plea could have been withdrawn. To the extent that he believes his mental condition justified withdrawal of the plea, this court, as discussed above, finds nothing in the record that would have justified such a motion. Thus, Stechauner suffered no prejudice. In summary, Stechauner fails to show ineffective assistance by any of his three attorneys. As a result, the state courts' rejection of these claims was not an unreasonable application of federal law.

22

CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Stechauner's petition for writ of habeas corpus is denied and this

case is dismissed.

Dated at Milwaukee, Wisconsin, this 31st day of December, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

23